Agnel vs. Ellis.

### No. 81.

### JOS. B. AGNEL *v.* T. & J. ELLIS.

1. The authority of an agent to draw an order upon an attorney at law for the payment of the proceeds of a claim in his hands to a third person must be express and special. A general power of administration is not sufficient.
2. A mandate conceived in general terms confers only a power of administration.

3. Powers of attorney are strictly construed, and however general in their terms, they will be restricted to the principal business of the grantor and not extended to cover particular and exceptional acts not necessarily connected with such business.

4. Such an order, not being payable in any event but depending entirely upon the contingency of collection, is not a bill of exchange or negotiable paper of any kind.

5. A party accepting a commercial draft or bill of exchange guarantees the right of the drawer to execute it, and the genuineness of the signature. In innocent hands, this guarantee extends to the question of an agent's authority where the draft is drawn by procuration. It does not, however, operate to protect the person who originally receives the paper and is so chargeable with the obligation of making due inquiry.

6. It is only in cases where commercial paper is involved that an assignee may acquire rights greater than those of his assignor. In other cases, error, fraud, forgery or extinguishment may be set up against all persons.

*Appeal from the Fourth District Court. Houston. Judge.*

*W. E. Murphy* for plaintiff.

Defendants, appellants, in person.

McGLOIN, J.—Defendants were the attorneys at law of one John O'Rorke, residing in St. Tammany parish, in this State, and as such they were charged with the collection, by suit, of a certain claim against the Chattanooga Railroad Company. Plaintiff, claiming to be the creditor of O'Rorke, sought to have the proceeds of this suit applied to the payment of this demand, and approached defendants with that object. E. J. Ellis, one of the defendants, thereupon gave plaintiff the following memorandum :

"Let Mr. McMahon sign the name of the plaintiff, John O'Rorke, or let Mr. O'Rorke sign it. If Mr. McMahon signs the draft for J. O'R., let him sign 'per pro. C. McMahon.' Let the draft be drawn for full amount, less costs and fees. I will accept and pay the draft then from proceeds of draft in New York.

" (Signed) E. J. ELLIS, *Atty. at Law*."

. On March 7th, 1873, plaintiffs brought to defendants a document of the following tenor :

"NEW ORLEANS, March 7, 1873.

"*Messrs. T. & J. Ellis:*

"SIRS:—Please pay to J. B. Agnel the full amount of money in your hands from the Chattanooga Railroad Company, less fees and costs.

"(Signed)                              JOHN O'RORKE.

"Per CHARLES MCMAHON."

On the reverse of this paper are written the following words :

"Accepted, and to be paid so soon as funds are received.

"(Signed)                    T. & J. ELLIS, *Attorneys at Law.*

"N. O., March 10, 1873."

It is shown that shortly after the execution of the above writings John O'Rorke, on hearing thereof, repudiated the transaction, claiming that McMahon had no authority to represent him as he had done, notifying defendants not to recognize said order or pay the fund sought to be affected thereby to any one but himself. This notification was, in the course of a short time, made known to plaintiff, and on April 29, 1873, he desiring to protest the document in question, defendants, to save expenses, waived protest and notice.

The questions to be by us determined are :

First—Was the execution of said document authorized by O'Rorke ?

Second—Was the document in question a draft or bill of exchange, and, if such, was the obligation of T. & J. Ellis that of acceptors, as governed by the laws and usages of commerce ?

Third—If defendants were such acceptors, are they estopped from now contesting the authority of McMahon and setting up error on their part in the transaction, if any existed ?

1st. We believe that the authority to draw such an order as the one in suit should be express and special. Defendants claim that it is a draft or bill of exchange, and, as such, within the article 2997 of the Civil Code. We shall see, further on, that the document sued upon is not paper of such character, and it must be governed by other provisions of the law than the section cited. Plaintiff contends that he has shown that

O'Rorke had a store in the country, was old and infirm and unable to manage it, and that McMahon transacted all the business, made all the purchases therefor and all payments. His counsel argues that this general power was sufficient to cover the execution of this order, and, as it was given to cover a bill due for purchases for this business, and McMahon had authority to pay bills so contracted, that it was immaterial whether the payment was out of one fund or another, or in cash or in paper which would secure the cash. This power, if established, amounts only to a general power of administration over the commercial trade or business of O'Rorke. C. C. 2996 declares that a mandate conceived in general terms confers only a power of administration. C. C. 2997, after enumerating several objects which can only be affected by express and special powers, concludes: "And, in general, where things to be done are not merely acts of administration or such as facilitate such acts." C. C. 2996 declares, in addition to what has been stated: "If it be necessary to alienate or give a mortgage or do any other act of ownership, the power must be express." Story on Agency, sections 21, 62, 68, 69, lays down the principle that powers of attorney will be strictly construed, and that however general in their terms, they will be restricted to the principal business of one granting it and will not cover particular and exceptional matters or acts not necessarily connected with such business. For instance, a merchant, temporarily absenting himself, leaves his full power to an agent to sell and buy for him. This will be construed as extending only to purchases and sales in the line of the merchant's usual or principal business and would not authorize a sale of his furniture or household effects. This same principle has been adopted into the jurisprudence of this State. Reynolds v. Rowley, 4 La. An. 396; Boykin v. O'Hara, 6 La. An. 115; Hartwell v. Walker, 4 La. An. 457.

We think, under these authorities, that a general mandate, whether written or verbal, to manage a store and the general affairs therewith connected, should be confined to matters

strictly within the current of the trade or business of said store, because such was no doubt all the principal contemplated confiding to the agent. We do not consider that a claim in the hands of an attorney and in suit is in any way necessarily connected with such trade, any more than would be the bank stock or bonds or mortgage paper of the principal, or his moneys, not constituting a portion of the capital invested in the business managed by an agent. The disposition and control of all such are acts of ownership, as contemplated by the Code, and not covered by a general power, but requiring *special* and *express* authorization.

2nd. A bill of exchange is peculiar in its nature and is invested, when negotiable, as commercial paper with exceptional privileges. These privileges cannot be extended to anything which is not a commercial and negotiable instrument. The characteristics of such paper are, in the main, well defined. Amongst other things, it must be for a sum certain and payable in any event. Story on Bills of Exchange, § 46.

This order was not payable in any event, but was to come out of such sums as might be realized from the railroad company. If the company failed to pay, the paper in suit was not collectible. Therefore, its payment was dependant upon a condition and was not due in any event, and it was not a commercial draft or bill of exchange.

3d. A party accepting a commercial, negotiable draft or bill of exchange, guarantees the authority of the drawer to execute the same, and the genuineness of his signature. This principle has been held applicable to such an instrument drawn by an agent, and the authority of the agent declared to be amongst the things guaranteed by the acceptance. Robinson v. Yarrow, 7 Taunton, 445. There is really no reason why, in the hands of an innocent holder, the guarantee should not extend so far. But as one who received a draft from a forger with notice, actual or legal, could not impose such guarantee upon the acceptor, and as one dealing with an agent must, at his peril, inquire into the scope of that agent's authority, and

is negligent if he do not, it is reasonable to hold a person taking a draft, executed by a mandatary, as charged with knowledge as to the character and extent of the agency, and not protected by the acceptance, as an innocent person would be. And in view of this obligation upon the part of persons dealing primarily and directly with agents, the drawer has as much right, and perhaps more, to presume that the payee has performed his prior duty, and ascertained the extent of the agent's power before taking his draft, as the negligent payee has to suppose that the acceptor would not commit himself unless the draft were correct.

At all events, this enforced guarantee, peremptorily debarring the acceptor upon commercial paper from setting up error, fraud, forgery, or other similar defenses, is in derogation of the general law, existing only in favor of commerce. Where the contract is not in the shape of commercial paper, it is open to attack and rescission for error, violence, fraud or menace, or illegality, or absence, or failure of consideration, under our Civil Code. C. C., Arts. 1881, 1893, 1819, 1824, 1846, 1847, 1850.

If, therefore, defendants accepted this order in error, as we believe they did, we stand face to face with express provisions of law, which accord them the right to be relieved, and we must be governed thereby. Civil Code, Arts. 1821, 1881.

It has been suggested that this cause should be remanded to be proceeded with after making the heirs of O'Rorke, now dead, parties. We see no useful purpose to be subserved by such a course, as it is not suggested, nor does it appear that plaintiff can hereafter present stronger evidence of McMahon's authority than has been brought up in this record. If O'Rorke owed him upon the original bill, plaintiff's remedy is not affected by this decree.

Judgment reversed.

Rehearing refused.